Filed 5/30/25  P. v. Ramos CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SERRATO JOSE RAMOS,<br><br>Defendant and Appellant. | B337505<br><br>(Los Angeles County<br>Super. Ct. No. BA274391) |

Appeal from an order of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2005, a jury convicted Serrato Jose Ramos of three counts of willful, deliberate, premeditated attempted murder after he and a co-perpetrator fired multiple gunshots into an occupied vehicle. In addition, the jury found true Ramos had personally discharged a handgun during the attempts and had committed the offenses for the benefit of a criminal street gang. The trial court sentenced Ramos to 50 years to life in prison. We affirmed the convictions and sentence on appeal. (*People v. Ramos et al.* (Mar. 21, 2007, B189663) [nonpub. opn.] (*Ramos I*).)

Almost two decades later, Ramos filed a petition pursuant to Penal Code section 1172.6[1] challenging his convictions. That section permits defendants convicted under certain recently invalidated theories of homicide—including "attempted murder under the natural and probable consequences doctrine"—to seek resentencing. (§ 1172.6, subd. (a).) After appointing counsel for Ramos, soliciting briefing, and holding a hearing, the trial court concluded Ramos had failed to make a prima facie case for relief and denied his petition.

Ramos now asks us to reverse, arguing the court improperly relied on the factual summary in *Ramos I* to deny the petition. We conclude, however, Ramos forfeited this argument by failing to raise it below. We further conclude the argument fails on its merits: The record does not support Ramos's contention the court "relied almost exclusively on" *Ramos I*'s factual summary in evaluating his petition. And even assuming for purposes of argument the court did so, Ramos fails to demonstrate any resulting prejudice.

Accordingly, we affirm.

---

[1] All subsequent statutory references are to the Penal Code.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

In July 2023, Ramos, representing himself, filed a section 1172.6 petition challenging his May 2005 convictions for attempted murder.  Checking boxes on a preprinted form, Ramos attested he was eligible for resentencing because an "information . . . was filed against [him] that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine."  Ramos also checked the box requesting the trial court appoint counsel to represent him in the resentencing proceedings.

The next day, the court issued a written order appointing counsel for Ramos and directing the prosecution to file a response to his petition.  The order included a summary of the facts of the case derived from *Ramos I* and set forth the trial court's tentative view that Ramos was ineligible for section 1172.6 relief:

"[Ramos] claims entitlement to relief under [section] 1172.6 . . . . [¶] The facts of the case, taken from the appellate decision, are summarized as follows.  Three men assaulted and attempted to rob Andrés Lopez.  Andrés managed to escape, ran to his house, armed himself with a tire iron, and left.  His cousin, Juan Reyes, witnessed this and followed him as Andrés'[s] uncle, Guadelupe Jimenez, entered his van and drove off in search of both young men.  Andrés located two of his attackers and struck one of them with the tire iron.  Juan and Mr. Jimenez arrived in the van moments later and drove off with Andrés inside. [Ramos] and codefendant Arturo Zambrano then drove up in a black Camaro, intercepting them.  They both began shooting at the van

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

with Andrés, Juan, and Mr. Jimenez still inside, striking it eight to ten times.

"Vivian Flores, a [Los Angeles Police Department (LAPD)] detective, happened to observe the shooting from a short distance away, and noticed Ramos holding a chrome firearm. LAPD officers John Jamison and Jason Sharman also heard the shooting and immediately gave chase to the Camaro as it fled from the scene at speeds up to 70 miles per hour. The Camaro crashed into another car during the chase. Zambrano and petitioner jumped out of it but were quickly apprehended during their attempt to escape on foot. The officers found a Beretta semi-automatic pistol on the floor of the passenger's seat and noticed all of the guns' rounds had been fired. They also recovered a .38 blue steel revolver containing empty casings from the floor behind the driver's seat.

"[Ramos] was convicted of three counts of attempted murder, among other crimes. In this respect, his culpability at trial was argued exclusively upon his having been one of the actual shooters. Consistent with this, the jury was instructed on express malice aforethought as the sole theory of criminal culpability. No instruction was given on felony murder, natural and probable consequences, or any other theory of imputed malice. The jury convicted petitioner of each of the three attempted murder counts and found true the allegations [Ramos] personally used a firearm in the commission of the crimes and that he personally discharged a firearm in the commission of the crimes. Based on the record of conviction, it preliminarily appears, therefore, that the petition is without merit.

"Nonetheless, the court will appoint counsel to assist petitioner further in the presentation of his claim. The prosecution is ordered to brief the matter as set forth in [section] 1172.6, subd[ivision] (c)."

The prosecution filed an opposition to the petition, arguing Ramos and his co-defendant "were prosecuted and convicted as the actual perpetrators who individually committed these crimes with actual malice[,] and [Ramos] therefore [could not] avail himself of the relief offered pursuant to [section] 1172.6."

Ramos's appointed counsel did not file any written reply to the opposition, failed to object to the court's July 2023 tentative ruling in any respect, and elected not to present any argument at the March 2024 hearing on the petition. At the conclusion of that hearing, the court denied Ramos's petition, adopting the July 2023 written tentative ruling as its final order.

Ramos timely appealed.

## DISCUSSION

Ramos contends we must reverse the denial of his petition because the trial court erroneously relied on the summary of facts in *Ramos I* to find him ineligible for section 1172.6 relief. We disagree.

"In 2018, the Legislature amended the law of homicide, eliminating several theories of liability based on imputed malice. It has also offered relief to those convicted under certain homicide theories, such as . . . attempted murder under the natural and probable consequences doctrine, whose convictions are now tainted. [Citation.] Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief [citation], and second, make a 'prima facie showing' [citation], before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law [citation]." (*People v. Patton* (2025) 17 Cal.5th 549, 556 (*Patton*).)

5

In assessing whether a petitioner has made a prima facie case, the court may "not engage in 'factfinding involving the weighing of evidence or the exercise of discretion,' " but may consider the record of conviction. (*Patton*, *supra*, 17 Cal.5th at p. 563.) " ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " ' [Citation.]" (*Ibid.*)

"A number of courts of appeal have held," however, " 'the Legislature intended to prohibit consideration of "the factual summar[y]" ' in an appellate opinion" for purposes of evaluating a section 1172.6 petition at the prima facie stage. (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238 (*Beaudreaux*), italics omitted.) At least one appellate court so held in March 2022—more than a year before Ramos filed his resentencing petition. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988, disapproved on another ground in *Patton*, *supra*, 17 Cal.5th at p. 569.)

Here, the trial court's July 2023 tentative ruling states expressly its factual summary is "taken from the appellate decision" in *Ramos I*. Ramos, however, failed to object to the tentative ruling on this (or any) ground. He therefore has forfeited any argument on appeal premised on the court's consideration of the *Ramos I* factual summary. (See *People v. Vance* (2023) 94 Cal.App.5th 706, 714 [defendant forfeited challenge to trial court's erroneous reliance on prior appellate opinion at section 1172.6 evidentiary hearing by failing to object].)

Further, Ramos's argument fails on the merits. The record does not support his contention the court "relied almost exclusively on [*Ramos I*'s] statement of facts in finding that [he] was ineligible for relief." To the contrary, the record demonstrates the court based

6

its conclusion on the fact "the jury was instructed on express malice aforethought as the sole theory of criminal culpability," and on the absence of any jury instruction on the natural and probable consequences doctrine. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"]; accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865, petn. for review den. July 24, 2024, S285447.)

Finally, even assuming for purposes of argument the court relied on *Ramos I*'s factual summary, Ramos fails to demonstrate any resulting prejudice. (See *Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1239 [trial court error in relying on factual summary in prior appellate opinion subject to harmless error analysis].) He does not attempt a showing the court might have ruled favorably on his petition had it excluded from consideration the factual summary in *Ramos I*. Ramos therefore fails to demonstrate any reversible error by the trial court.[3] (See *Vance*, *supra*, 94 Cal.App.5th at p. 717.)

We are not persuaded otherwise by Ramos's argument—raised for the first time on reply—that "malice was imputed to [him] based on a gang expert's testimony[,] most of which would be inadmissible today or subject to bifurcation." Ramos has failed to provide us with a copy of the relevant testimony, and he cites no pertinent supporting authority. We therefore decline to address this belated argument. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 ["[i]n order to demonstrate error, an

---

[3] In light of our conclusion, we need not address Ramos's additional contention his counsel rendered ineffective assistance by failing to object to the court's purported reliance on *Ramos I*'s factual summary.

7

appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"].)

Accordingly, we affirm.

## DISPOSITION

The order denying Ramos's section 1172.6 petition is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



M. KIM, J.

8